Pratt, J.
This is a motion by plaintiffs to vacate the interlocutory judgment entered herein November 15, 1890, on the ground of irregularity. The irregularity which they allege is that the defendants’ time to answer had not expired. The parties who are prejudiced do not make the motion ; it is made by plaintiffs alone. So long as the former are satisfied with the judgment, this irregularity need not concern the plaintiffs.
But plaintiffs, through their counsel, allege that they are prejudiced by the judgment. In answer to that contention, it is to be noted that the judgment grants them substantially the relief which they prayed for in their bill, and such as was entirely appropriate to the allegations therein contained. They do not aver that they are certificate holders in their own right, nor do they ask any relief as such. The relief sought by them is that they should have leave to account as trustees, and be discharged from their trust. The judgment provides that they may account, and that thejr shall be discharged by final judgment when they have fully accounted. Meantime the court has appointed receivers to take the property in their hands, and if they would turn it over to the receivers their accounting will be a very simple matter.
True, they say the property in their hands is incapable of being actually partitioned, but that is a matter which concerns the certificate holders, and they have not yet complained. Besides that, the judgment provides for all that. It adjudges that the property in question belongs to the certificate holders, and provides a speedy method for ascertaining the nature, *168 extent and value thereof so that they may obtain the benefit of it. The court will be better enabled to judge whether the property can be actually partitioned or not, when it learns what it consists of. And it appears that one of the chief representatives of the plaintiffs has declined to inform the receivers of facts necessarily affecting the value of the stock of the constituent corporations, which is the main item of property in the plaintiffs’ hands. Again, plaintiffs say that numerous owners of fifty1- million dollars’ worth of property are not yet before the court, but plaintiffs ought to have thought of that before. They, by their bill, made Messrs. Wormsers and Nash, Spaulding & Co. defendants, as representatives of all other certificate holders.
If they wished others to be joined, they might have joined them or brought them in as unknown owners. What they did was to bring in certain certificate holders as representatives of a class, who might defend for that class under section 448 of the Code. . The ■court has now taken the subject matter of action into its custody, and proposes to deal with that as a. proceeding, to a certain extent, in rent.
The absent part owners may come in under the judgment and receive their shares, because the judgment has been entered on motion of certificate holders, who move, not for themselves alone, but in behalf of .all other certificate holders, hence the court will provide for those who are not actual parties to come in under the judgment. Indeed, that is their plain right ■and plain duty (Travis v. Myers, 67 N. Y. 542 ; Kerr v. Blodgett, 48 N. Y. 62).
I repeat that this motion is not made by certificate holders. They do not complain. The complaint •comes solely from the trustees of the sugar trust, as .such.
Furthermore, plaintiffs’ counsel were asked on the *169 argument to state wherein the judgment was prejudicial to them, in order that it might be modified or amended if necessary, but they utterly refused to state anything on that point, or to discuss the merits of the judgment at all. They stood wholly on their alleged technical rights. I fail to see how any technical right of theirs has been violated ; for if the right to answer is cut off, the plaintiff's bill is the only pleading before the court.
It was claimed on the hearing of the motion for the appointment of receivers that a reorganization was desirable, and the court can already see that that must be true. The appointment of receivers, and the judicial ascertainment of the value of the property through them, are the first and necessary steps to accomplish the reorganization. Can it be reasonably expected that certificate holders will come into a reorganization, or that they or anybody else will bid upon the property for that or any other purpose, unless they know what it consists of, and its value? The judgment directs that the receivers shall at once ascertain and report to the court what the property consists of, its value, and the best disposition which can be made of it, for the interests of all concerned. In fact, it looks to immediate action and immediate report, which shall inform the court and certificate holders of the nature and value of their property, so that they can exercise intelligent judgment as to the course which they will pursue— whether to have the property sold in parcels and the proceeds distributed, or go into a scheme of reorganization. It therefore seems as plain as anything can be that the chief difficulty in the way of reorganization, is the ignorance of everybody except plaintiffs and their counsel of the value of the stock of the corporations which plaintiffs lately held, and that is the chief item of the property in question. The judgment provides for the ascertainment of that fundamental fact by *170 requiring the corporations to make discovery and disclosure in that respect. It would therefore seem that reorganization will be hastened by obeying this provision of the judgment, instead of refusing to do it, as the plaintiff’s chief instrument (Mr. Searles) has already done, and then sending counsel to court to move to-vacate the judgment on technical points, and to refuse to answer a plain question by the court as to the reason-, why they allege that the judgment will retard the-reorganization.
It may be as well to note here the answer to the-suggestion that the provisions of this judgment necessarily involve delay in the receivers’ report, until an-examination can be made into the affairs of these corporations. That is a plain mistake. The receivers are thereby directed to make report from time to time.: They may report upon the value of the stock of these-corporations just as soon as Mr. Searles and the other officers of these corporations will obey this judgment by disclosing the property represented by that stock, but he refuses to permit these receivers to ascertain this, and thus himself prevents their report. Instead of assisting them in that work, he comes to court to have the judgment set aside which provides for this fundamental disclosure. To the ordinary mind this, seems a very puzzling thing, especially when done by the chief advocate of speedy reorganization.
The counsel refused to explain this mystery. I infer that they were not at liberty to do so. The court must, therefore draw its own inferences, one of which is that the provisions of this judgment are right on the merits,, and that they are in the interests of the certificate holders in any view, especially in the interests of those who desire a speedy and fair reorganization.
The property being in the hands of the receivers- and its value being known, it may be sold or turned over without delay to certificate holders, if they shaü *171 unite or sell for its fair value, to be paid for in part with, certificates of any substantial portion of them who wish, to reorganize, it being always understood that they shall pay the fair value of each share to each certificate; holder who does not wish to unite; but the scheme, must be fair, open and above board. No holder must, be forced or allured into any scheme. He must be able to act upon his own judgment as to what is for his. own interests, and that is precisely what this judgment means by requiring this disclosure of facts affecting the. value of this stock in the most speedy manner.
Before the receivers were appointed, the property was in the custody of a body of men who had no legal right.to deal with it;- whose duties were defined by no. written instrument; who had given no security for its, safety, and who refused information to certificate, holders. The plaintiffs seemed to be most concerned about the rights of Mr. Gray, the receiver of the North. River Sugar Refining Company. Those rights have.been already twice considered by this court—once at General Term of the First Department, and again in this Department by Mr. Justice Cullen, on Mr. Gray’s, motion to be joined as defendant in this action. In neither case was the court able to see how Mr. Gray,, as such receiver, had any interest in the property in question. He has been joined as a party defendant here on his own motion. He had notice of this application for this judgment, and instead of showing why it should not be entered he came not at all. The affidavit filed in opposition to this motion shows that he does not propose to take any part in this action. I therefore fail to see why Mr. Gray’s rights in this action should be any concern of the plaintiffs.
After the argument of this motion, and the parties had dispersed, an affidavit of Mr. Talbot was sent to me wherein he states he is the attorney for the Brooklyn Sugar Refining Company, one of the defendants in *172 this action, and that he joins in the motion to vacate this judgment. No one appeared in court to represent him or his clients on the motion, so far as I could observe, and he now fails to state when he appeared in the action. He further states that his time expired, but had been kept open. Everything appears to have been kept open in this suit from the commencement until the certificate holders began to act for themselves. Mr. Talbot fails also to show wherein the judgment prejudices his client, or what answer he desires to make. Indeed, he does not show that he desires to make any answer.
To test the sincerity of his appearance, what answer can he make ? Does he wish to deny that these trustees have property which does not belong to them, and that they desire to deliver it up and account to the true owners ? The fact is, he did not appear'upon the argument of the motion, and he cannot now be regarded as joining in the motion.
1 Plaintiffs further claim that the original motion by Mr. Cameron was not broad enough to authorize the court to enter the judgment, and that that motion was waived, abandoned or withdrawn. This brings us to a technical view of the motion. We may observe, in the first place, that on October 15, 1890, a motion for judgment was duly noticed for the 20th by Mr. Cameron, a certificate holder, who was joined as defendant on the 14th. He did not answer. The allegations of the complaint were full enough for him. He simply insisted that judgment should be entered as the logical result of the allegations of the complaint. The ground of his motion was that time to answer had expired, and plaintiffs did not mean to enter judgment promptly, but wished to delay that result until they could accomplish certain schemes of their own. This action was commenced July 26 or 29. On August 20, judgment might have been entered. True, Mr. Gray’s motion to *173 be admitted as a defendant was pending, but there was. no stay of proceedings. That motion was decided August 22, but the order was not entered until October io. In the mean time, Mr. Gray decided that he would not answer. On September 23, Mr. Gleason appeared, joining himself as defendant, and answering; but his answer presents no question as against the plaintiffs’ right to an accounting and to be discharged when they had accounted. As already observed, they do not sue as certificate holders, and seek no relief in that capacity. . Mr. Gleason did not wish to raise any question about their right to render an account, and all other points which he desired to present as against the trustees as such, could be raised on their accounting. The other points raised by his answer related to questions which might arise as between certificate holders, and may be properly disposed of when they come in or are brought in under the judgment; hence, he joined with Mr. Cameron in his motion for judgment, which was in behalf of himself and all other certificate holders. The judgment is therefore plainly not for himself, but for all, and all may come in under it and have their rights settled (Hallett v. Hallett, 2 Paige, 15 ; McKenzie v. L’Amoureaux, 11 Barb, 516, and authorities above cited).
This motion was made by Cameron, and Gleason joined in it. It is not true that it was waived, withdrawn or abandoned. On the contrary, it was vigorously pressed. The court determined that it would not decide the motion at once, but reserved the question and substantially so stated in the order appointing the Receivers. On the. return day of the order to show cause, and on the argument, there was no pretense that any party’s time to answer had been extended, or that any technical obstacle stood in the way to the entry ot judgment, except. Mr. Gleason’s answer, and he joined *174 in asking for judgment as above stated. Since all parties had notice of the motion, they are bound by the judgment.
But there is another and broader view. The •corporations defendant are simply instruments in the hands of plaintiffs who elected all the directors, and the latter elected the officers, and most of the plaintiffs hold offces in these corporations. Mr. Searles is an ■officer of four or five of them; Mr. Gurgensen of another, and Mr. Stursberg of two more.
Now, if the plaintiff can, by merely extending time to their own instruments, by obviously collusive agreements, then the action would never be in condition for •certificate holders to obtain judgment, which will be a reproach to the administration of justice. I have, therefore, no doubt of the power of the court to disregard ■extensions of time as between parties situated as these .plaintiffs and these defendant corporations are, because I am satisfied they were collusively given, if given at •all, for the purpose of keeping the action open and preventing the entry of judgment on the application of -certificate holders. It is a significant circumstance in this connection that there is now an entire absence of .any affidavit in behalf of any one of the defendant corporations tending to show that they desire or intend to interpose an answer, or that they claim to have any honest defense. Indeed, I cannot imagine how they could raise an issue upon the complaint. There is, in my judgment, no merit in this action [motion], and it •can only result in embarrassment to the Receivers, and delay in settling up the affairs of the Trust. There can be no doubt that a speedy reorganization is for the best interests of certificate holders, and any unnecessary delay would be injurious to all parties interested. It is clear there can be no reorganization except through the Receivers, and any obstruction placed in the way of their duties will delay such results. If it can be made *175 to appear that any party is prejudiced by the decree, or that it is imperfect in detail, there is no difficulty in modifying it so as to do justice to all. It must be clear that as soon as the value of the trust property can be ascertained, at that moment the exact value of the ■certificates can be computed. Until then all is involved in doubt and uncertainty, and any stay upon the Receivers delays reorganization.
Motion denied.
Note on the Power of the Court to Proceed on the Application of Either Party, and on Transferring the Conduct of the Cause.
The common law tradition that the plaintiff is the actor, •and may proceed or not at his pleasure, subject only to the power of the court to dismiss the action in case of unreasonable neglect, never was fully adopted in courts of equity (but see cases i and 2) ; and has lost much of its influence within the Code. Thus it was at one time held in an early •case under the Code, that a defendant, though named on the record, has no right to appear before he has been served. But it is now however settled that one who is a defendant in a suit actually commenced and pending, has a right to file and serve a notice of appearance and take a hand in the ■contest, without waiting to have the sheriff come after him (case 4, etc). The rule that “ a voluntary appearance is equivalent to personal service,” now is understood to be a good rule which works both ways.
It may be observed that in the case in the text the motion for judgment was opposed on the merits, so that the case may well be thought supported as a submission of the cause on the pleadings (cases 6 and 7). But the court do not rest the decision fully on this ground, but r.ather on the ground that the relief was no more than the plaintiffs had asked in their complaint, and hence an assenting defendant having an interest as one of the beneficiaries in whose favor plaintiffs sought to account, could apply.
It is familiar law that when the answers are in from all the defendants who have not made default in pleading, and no material fact is denied in them, plaintiff may without awaiting ordinary course of trial at circuit or special term, proceed at once by notice of motion on the pleadings, to ask for judgment (cases 5-7).
The importance of the practitioner of the case in the text *176 is that it allows a defendant to make such a motion ; and sanctions the court in granting it, even if there are defendants who have not answered nor suffered default if they are given notice of the application and do not oppose it. Of course the court will guard against collusion (case 7).
In courts of equity the power of the court in which the regularity of such practice, considered in this aspect depends, has been repeatedly exercised in a much more formal and continuing method, by giving to a party not originally entitled to it, the conduct of the cause. Cases of this kind are usually, if not always, cases where a trustee is complained of by a co-trustee or by a beneficiary, as not proceeding with diligence, or where a beneficiary or creditor-claiming to represent others similarly situated as himself, is in like manner complained of by them. The most familiar instances are those arising in creditor’s suits ; where it has been constant practice to allow a creditor who sued for the benefit of himself and others similarly situated, who might come in, etc.,—to discontinue at any time before decree ; but if he did not do so to allow any other such creditor after decree to have “the carriage of the decree,” if the original plaintiff was dilatory (cases 21-28).
But the power of the court is not confined to this class of cases, nor to proceedings after decree. It may be laid down as a general rule, that where one standing in the relation of a trustee is suing as such, to enforce the rights of the beneficiaries who are dependent for the protection of their interests upon his course, and he has made them parties to the record, or the court has admitted them as parties, any of them may apply to the court for the conduct of the cause when his course is not such as to protect their interest (cases 8-31).
Practice in creditor's suits. The practice in suits by a creditor, legatee, etc., suing for the benefit of himself and such others as may come in, is somewhat peculiar, for he is not a trustee, but only one of a class. He may compromise and dismiss his bill, if he can do it before any other of his class has actually come in. Hence the court may allow such another to come in before decree, and this will preclude discontinuance by dismissal, and if the original plaintiff drops out or delays, the creditor who comes in may have the conduct of the cause (case 35).
It is the better opinion that it makes no difference that he may have come in as a defendant instead of a co-plaintiff ; for in equity, the court looks behind the ranks in which the parties are arranged on one side or the other, and treats them according to their real interest (case 53).
*177 After decree for accounting in a suit for the benefit of plaintiff and of such persons similarly situated as may come in, the carriage of the decree may be given to one or another as justice requires (cases 31-41). If the interlocutory judgment or decree has sent the accounting to a master, the application to come in is to be made to him (cases 42-49). In transferring the conduct of the cause the court have-power to require the solicitor for the plaintiff on the record,, to allow the new dominus litis to take copies of the papers in the suit so far as necessary to carry its order into effect (cases 50-52) ; but the lien of an attorney may, even if the client’s ownership would not prevent ordering the papers to-be delivered over.

Note of Cases.

1. By the 66th rule of the N. Y. court of chancery it was provided that where the cause stands for hearing on bill and answer against part of the defendants, if the complainant does not use due diligence in proceeding against the other defendant any of those who have perfected their answer may apply to dismiss the bill for want of prosecution. See 1 Paige, 548.
2. Where the action has not been noticed for trial by the plaintiffs- and only one of several defendants, who have approved and answered has noticed it, no effectual trial can be had. The plaintiff cannot be-forced to trial in such a case : Ward v. Dewey, 12 How. Pr. 193 ; Tracy v. N. Y. Steam Faucet Co., 1 E. D. Smith, 349 ; Burnham v. De Bevoise, 8 How. Pr. 159 ; Powel v. Finch, 5 Duer, 666.
3. A co-complainant may discuss a bill as to himself. Bathew v. Needham, Wy. Prac. Reg. 179; Langdale v. Langdale, 13 Ves. 167; Holkirk v. Holkirk, 4 Mad. 50; Conington v. Holly, 1 Dick. 280; Gilbert v. Hawles, 1 Ch. Ca. 40; Lashley v. Hogg, 11 Ves. 602; Wood v. Westall, 1 Younge 305.
4. Appearance before service.] Higgins v. Freeman, 2 Duer, 650. One against whom personal judgment is prayed may appear though not served. S. P. Wellington v. Claason, 9 Abb. Pr. 175; s. c. 18 How. Pr. 10. [Contra, McKnight v. Baker, 1 How. Pr. 201.] Clinton v. King, 3 How. Pr. 55. One whose property has been taken in replevin may appear though not served. Georgia Lumber Co. v. Bissell, 9 Paige, 225. One who has been arrested on a ne exeat may appear though not served. Waffle v. Vanderheyden, 8 Paige, 45. One who has been enjoined may appear though not served.
5. Motion for judgment on the pleadingsi\ People v. Northern R. R. Co. 42 N. Y. 217; aff'g 53 Barb. 98. Where there is no issue to *178 he determined by evidence, and no trial being necessary, beyond an application of the law to the facts, plaintiffs apply to the court, at special term, for judgment on the pleadings.
6. Submission on the pleadingsl\ Brinckerhoff v. Brown, 7 Johns. Ch. 223. It is competent for the parties to submit the cause on the merits, upon the pleadings, when there is no express denial of an essential allegation ; and on such submission the allegations by the respective parties are taken as true.
The equity practice of submission on the pleadings obtains under the Code of Civil Procedure, and in American courts of equity. St. Paul R. Co. v. Robinson, 41 Minn. 394 ; s. c., 43 North W. Rep. 75 ; Willson v. McDonald (Cal. Supm. Ct. Gen. T. 1869).
Albany Savings Institution v. Burdick, 87 N. Y. 40; rev’g 20 Hun, 104. Under the Code when the facts appear on the pleadings, the court can make a full determination of the entire controversies on the .application of either party.
The interest of all the parties on opposite sides or on the same side may be adjusted in one action. Derham v. Lee, 87 N. Y. 599; Price v. Holman, 17 State Rep. 572.
7. Collusion^ In Plonsky v. Japha, 7 Daly, 226, the complaint ■alleged that plaintiff and one defendant were partners, and the firm becoming insolvent assigned for benefit of creditors to another defendant who qualified, but, although requested, refused to bring an action to settle the firm’s affairs,—held that the court would not, on stipulation between the parties who were partners, and without any appearance by the assignee, nor proof of service on him, nor proof that he •had refused to intervene in his own behalf as plaintiff, grant an interlocutory decree for an accounting, and appoint the assignee receiver ■with direction to pay counsel fees, and without any personal judgment against the defendant partner; the application being regarded as collusive.
8. Conduct of the cause given to one co-plai7itiffl\ Butlin v. Arnold, 1 Hem. & M. 715 ; 12 W. R. 571 ; 10 L.J. (N. S.) 95; 3 N. R. 687. When one of two co-plaintiffs refuses to concur in the appointment of a solicitor, there being no solicitor on record, the proper cause is for the remaining 'plaintiff to apply in chambers for the sole conduct of the cause on a summons to be taken out in person against the refusing plaintiff only; and a motion to strike out the name of the refusing party as plaintiff and make him a defendant will be refused.
After decree the solicitor of several co-plaintiffs gave up his profession. Some of the co-plaintiffs having refused to take any steps whatever, or to concur in the appointment of a fresh solicitor,—held, *179 'that after serving such co-plaintiff with notice, the plaintiffs wishing 'to proceed might apply personally in chambers for leave to have the sole conduct of the suit. It is not necessary in such a case to give .notice of the application to the defendants. Ib.
.9. — and costs charged on the other who delayed.] Millar v. Smith, 3 Beav. 598, note a. This case is not reported. The note ¡states that the solicitor, citing it, stated it as follows :—A cause being ¡at issue, one of the co-plaintiffs for good reason refused to proceed ; this refusal of the one paralyzed the proceedings ; and the other plaintiff gave notice of motion to be at liberty to have the future prosecution of the case and to name a solicitor to act therein. The only ■other course would have been to have dismissed the bill.
The Vice-Chancellor made an order that the ‘ co-plaintiff making the application should have the future conduct of the cause, and that the other co-plaintiff should pay the costs of the application. Said to have been decided by the Vice-Chancellor in 1839.
10. Original; next friend absconded j condtict given to co-plaintiff-l Greenaway v. Rotherham, 9 Sim. 83; s. c., 7 L. J. (N. S.) Ch. 98; 2 Jur. 45. Where a suit was instituted by the father, mother ■and children, by the father as next friend, who afterwards absconded ■and went abroad, the court refused to appoint a new next friend, but •ordered that a person to be named by the wife should be allowed to prosecute the suit in the name of the plaintiffs, without prejudice to any lien which the husband’s solicitor might eventually have for his •costs.
11. Conduct taketi from plaintiff having no interest, and given to plaintiff having interest.J Rowlinson v. Hallifax, 2 Sim. & S. 27. The representative of one claiming to be executor filed a bill, but the will appointing the executor was not proved and an administratrix was afterwards appointed and the bill amended by joining her as •co-plaintiff. The solicitor of the original plaintiff continued to conduct the cause, and a decree for an account and inquiries was made. The administratrix then moved that she be permitted to prosecute the suit, and all the papers in the cause be delivered to her solicitor. ■—Held, that the motion should be granted. The Vice-Chancellor observing that if he had been aware at the time when the cause was first heard that the original plaintiff had no interest, he should have •dismissed the bill instead of allowing it to be amended.
12. Contest as to interest not alone ground for taking away conduct of cause.] Jeudwine v. Agate, 5 Russ. 283. A plaintiff who sues as creditor will not be deprived of the conduct of the suit, because the master has reported that he is not a creditor on application by *180 another creditor whose debt was found due, if exceptions to the report that plaintiff is not a creditor are pending, and there is no reason to-suppose that the exceptions will not be prosecuted actively.
13. Conduct of trustees’ petition to ascertain who entitled given to one of theml\ Re Hutchinson’s Trusts, 1 Dr. & Sm. 27, 30. Petition was presented, under the trustee relief act, by the trustees of one deceased, praying that inquiries might be made to ascertain who were entitled to a fund paid by them into court as next of kin. On application the carriage of the proceedings was directed to the solicitor, who represented the major part in number of the next of kin who appeared on the petition.
14. Conduct of later unnecessary suit given to next friend who broiight the earlier.] Frost v. Ward, 3 New. Rep. 348. Two suits were instituted in consecutive months on behalf of the same infant plaintiffs for the administration of the same estate; a decree was obtained by consent in the later suit; the solicitors for the plaintiffs in the later suit were the London agents of the solicitors of the defendant on both suits;—Held, that the later suit ought not to have been instituted, and the conduct of the later suit were given to the next friend who had instituted the earlier suit.
15. Carriage of decree in trustees' suit to account given to beneficiary after ordinary decrees.] Naylor y. Smith, 15 Weekly Rep. 528, (1867). Where a testamentary trustee, in order to avoid a bill for an account which he had neglected to render his cestui que trust filed an ordinary administration bill,-—-held, that the trustee would not be required to pay costs up to the time of the hearing, as a trustee had a right to have his accounts taken in chancery; but under the circumstances the carriage of the decree (which was on the ordinary administration decree) would be given to the cestui que trust.
16. Carriage of decree on delay by next of kin as plaintiff given to a creditor.] Sims v. Ridge, 3 Mer. 458. In case of unreasonable delay in prosecuting a decree in a suit by the next of kin against an administratrix for the settlement of the estate of the deceased, the court will give leave to a creditor to prosecute the decree.
As the creditor is prevented by such, decree from the bringing a suit to recover his debt, he would be without remedy unless leave is given.
17. Second suit being pushed to decree, to bar first suit conduct of second given to plaintiff in the first.] Belcher v. Belcher, 13 Weekly Rep. 913 ; s. c., 6 New Rep. 314. When a common administration bill is filed by one of the next of kin against the widow and *181 others, and the widow, instead of accounting, files a similar bill without bringing in the plaintiff in the first suit, and by the decree in the second suit the first suit is staid, and an agreement come to to make the costs costs in the second cause,-—held that the court would give the ■conduct of the cause to the plaintiff in the first suit.
18. Court entertaining first suit “may give plaintiff therein conduct of a suit in a?iother court by an interest administration become bankrupt.] Re Hopkins, Dowd v. Howtin, L. R. 19 Ch. D. 61. An action was commenced in the court of one of the vice chancellors for the administration of the estate of testator against the administrator with will annexed. The administrator being interested in that' capacity in the estate of another testator, commenced an action for the administration of his estate in the court of a different vice chancellor, and then became bankrupt. The plaintiff in the first suit moved in that suit that a receiver of the estate might be appointed, and that the plaintiff might be permitted to prosecute the second action in the name of the administrator.—Held, that the plaintiff was entitled to the order asked for and that it was properly made in the court to which the first action was attached.
19. Carriage of decree for sale in two suits taken from an interested solicitor in one and given to the plaintiff in the other. Keons v. Magawly, 7 Ir. Eq. R. 603. In a question as to the carriage of á decree for a sale in two suits, where the solicitor in the first had taken an assignment of a charge, prior to the plaintiffs, and it was in that cause reported at ^1800, but in the second cause at ¿900 (which was explained by a difference in the accounts decreed).—Held, that the solicitor in the first cause having, by the assignment, an interest different from the plaintiffs, the carriage of the decree should be given to the plaintiffs in the second suit.
20. Conduct of the catise not taken away on suspicioji merely.] Longbourne v. Fisher, 27 Weekly Rep. 405. In an administration suit it was found necessary to take proceedings to recover funds due to the testator’s estate, and which had been misappropriated ; and an action was begun by an executor against his father and half uncle, co-partners, who were the accounting parties. The beneficiaries under the will, alleging that the executor’s object in commencing the action was to obtain the conduct of it and so to be in a position to shield his father, applied to have the conduct of the litigation given to them. —Held, that the executor was entitled to commence the action; and as there had been no misconduct on his part, the court would not deprive him of the conduct of it.
Harrison v. Richards, L. R. 1 Ch. App. 473. A decree having *182 been made for the administration of personal estate at the suit of the. residuary legatees, it was found necessary that proceedings should be taken in equity against a person who had had dealings with the testatrix. The executor was willing to conduct them and no case of •misconduct was established against him. An order of the vice chancellor giving the plaintiffs liberty to take proceedings in the name of the executor was discharged on appeal and the executor directed to> take them.
21. Any creditors may have carriage of a decree.] Creuze v. Hunter, 2 Ves. Jr. 157, 165 ; s. c. 4 Bro. C. C. 151. Any creditor may obtain an order for prosecuting a decree for an account.
22. Hines v. O’Keeffe, 2 Jones, 625. In a creditor’s suit, the plaintiff obtained a decree to account. Afterwards, and before the decree.was made up, the plaintiff was paid his demand. The plaintiff having neglected to prosecute the cause, the court gave the carriage of" the suit to "a third person, alleging himself to be a creditor of the.deceased.
’23. Even though interested only in partyl\ Edmunds v. Acland, 5 Mad. 31. The plaintiff filed a bill to enforce a trust deed. The first trust of the deed was to indemnify a surety against the debts of" the grantor; and the plaintiff claimed an interest, in the surplus. The decree directed an account of the debts. One who was found to be a creditor moved the court to be permitted to prosecute the suit on the. ground of the delay in the plaintiff. His motion was opposed because the applicant was interested only in the first part of the decree.—Held,. that the application should be granted, as the creditor by coming in under the decree was not at liberty to institute a new suit, and would therefore be without remedy. After such creditor had obtained payment any other person interested in the further prosecution of the suit, might apply.
24. Individual preferred to partnership creditori\ Re McRae, Forster v. Davis, 18 W. N. 167. Action by creditor of a firm for the administration of estate of deceased. The plaintiff in the first action claimed against testator on a bill of exchange which had. been accepted by testator’s firm; but the writ was issued as for a separate debt of testator on the allegation that the partnership was illusory. A second action was instituted in another branch of the court by another creditor for a separate debt with knowledge of the-first action and a friendly decree taken.—Held, that the case constituted an exception to the general rules, the plaintiff in the first action being-a partnership creditor, and that the plaintiff in the second action should be preferred in allowing the conduct of the cause because, he was a. separate creditor.
*183 25. Delay, etc.) Price v. North, 2 Y. & Coll. 621, 628 ; s. c., 7 L. J. (N. S.) Ex. Eq. 9. Here the conduct of a creditor’s suit was taken out of the hands of the plaintiff on the ground of delay and mismanagement in regard to the sales of real estate, delay in the payment of money into court, and the appropriation by the plaintiff’s solicitor of rents and profits of the estates, in discharge of his costs.
26. Powell v. Wallworth, 2 Mad. 183. A creditor’s bill was filed on which a decree was made in 1814. In 1817 a motion was made by a creditor for leave to prosecute the suit upon an affidavit that since the decree, though made so long ago, no interrogatories had been filed to examine the defendant.—Held, that the delay not having been accounted for, the motion should be granted.
27. Delay not excused by pendi7ig of a7iother siiit Í71 jurisdictio7t, •where 7iearly all the assets werel} Driswell v. King, 8 L. J. (N. S.) Ch. 158. Though the assets, excepting a small part not realized, were situated in Ireland, where another creditor’s suit for the administration of the same estate was being actively prosecuted,—held, the plaintiff in a creditor’s suit in this country, is bound to proceed with proper diligence, notwithstanding these facts, and not having done so, the conduct of the cause was given to another creditor applying for the same, who had proved his debt under the decree.
28. Carriage 7iot take7i away because of seeking i/ijimctio7i.] Bookless v. Crummack, C. P. C. 125. It is not a sufficient ground for depriving a plaintiff of the conduct of a creditor’s suit, that the proceedings up to the decree have been conducted by the executor's solicitor with the view of obtaining an injunction against a creditor proceeding at law.
29. No77ii7ial plai7itiff 7tot co7itrolled by real party Í71 Í7iterestl} Pentland v. Quarrington, 3 Myl. & C. 249. A suit was instituted by one person in the name of another, under the power of attorney, and' a decree was made. The defendant, who was aware that the suit was in fact prosecuted by the attorney, subsequently made an arrangement with the nominal plaintiff, that all proceedings should be stayed for twelve months; and this arrangement was embodied in an order made upon the application of the defendant, and by consent of the nominal plaintiff, but without the concurrence of the attorney; a petition was afterwards presented by the attorney, praying that the order might be discharged for irregularity, and that the attorney might be at liberty to prosecute the suit without the interference of the nominal plaintiff.— Held, that no part of the prayer of this petition could be granted.
Chancellor said: “ The only suit in court is between P. and the *184 party with whom the contract was made. P. is a party to the arrangement for effectuating which the present order was made. Your case is against him, that whereas he has authorized you-to carry on this suit in his name, he has entered into the arrangement in question without your concurrence.”
[The contrary is the American doctrine, nominal plaintiffs in the rare cases where they still appear (as distinguished from those entitled to sue as trustees of express trusts) being not entitled to the control of the cause.]
30. Beneficiary must take care of the interest of his fellows.] Williams v. Powell, 2 Phillips, 329. The plaintiff and the appellant were entitled in equal moieties to a residuary esfate, in respect of which the bill charged the defendants, the executors, with obvious breaches of trust and prayed for an accounting. The plaintiff took a decree for such an account as to his own moiety but as to the other moiety for common accounts only.—Held, that when one of the several cestui que trusts institutes a suit for relief in respect of a breach of trust, he is bound in the conduct of the suit, to take care of the interests of the others as well as of his own. Appeal allowed.
31. Remedy for creditor's delay not dismissal, but to applyfor conduct.] Simons v. Bagnell, 19 Weekly Rep. 217. Where a decree was made in an administration suit directing the usual accounts and inquiries and the plaintiff took.no steps to prosecute the decree.—Held, that the defendant was not entitled to move to dismiss for want of prosecution, but ought to apply to obtain the conduct of the cause.
32. Fleming v. Prior, 5 Mad, 423, (1823). Where a court by its decree has assumed the administration of the assets of the debtor so as to prohibit a creditor from proceeding at law, such creditor should be at liberty to prosecute the suit, if the proper parties are guilty of ■delay.
33. Dixon v. Wyatt, 4 Mad. 392. If a creditor files a bill on behalf of himself and other creditors, and a decree is obtained, and the plaintiff dies, another creditor. may obtain an order to file a supplemental bill of the representatives if the deceased plaintiff do not revive within a limited time.
34. Creditor’s suit,—before decreel\ Handford v. Storie, 2 Sim. S & S. 196 ; s. c., 3 L. J. Ch. 110. In a creditor's suit the original plaintiff is sole dominus litis until after decree. The court say : “ The reason of the distinction is that before decree no other person of the class is bound to rely upon the diligence of him -who has instituted his suit, but *185 may file a bill of his own; and that after a decree no second suit is permitted.”
35. Any creditor may come in by leave.] Piedmont & Arlington Life Ins. Co. v. Maury, 75 Va. 508; s. c., 12 Reporter, 510. If a creditor applies and gets made a party before decree the original plaintiff is no longer absolute domimis litis, and cannot dismiss the bill, except only .as to himself, leaving the other who has been made a party to go on with the suit.
36. One co-defendant against another?] Walker v. Preswick, 2 Ves. 622. One defendant may prosecute a decree against another; as where a co-obligor pays for his principal.
37. Effect of abatemetit?] Cook v. Bolton, 5 Russ. 282. Where ■great delay has occurred in the prosecution of a decree for the administration of assets, a creditor may apply to have the conduct of the •cause, though it has become abated by the death of a defendant.
38. Cavanagh v. Blake, 8 Ir. Eq. R. 515. The decree was twenty-five years old, but there -had been several abatements and revivals from the death of the parties .—Held, that the 106th general rule did not apply to such a case. The plaintiff, undertaking to prosecute the cause with due diligence, order refused.
39. Nash v. Ward, 9 L. J. (N. S.) Ch. 265. If, after a decree in a creditor’s suit, the suit abates by the death or bankruptcy of the plaintiff, another creditor cannot upon petition, without filing a supplemental bill, upon leave for that purpose, obtain an order giving to him the •conduct of the cause.
40. Johnson v. Hammersley, 24 Beav. 498. After decree in a ■creditor’s suit the plaintiff died leaving no personal representative. The court refused to allow the suit to proceed upon the motion of the accounting parties, but offered to do so if a creditor applied.
41. Scott v. Maxwell, 20 Weekly Rep. 763. Creditor’s suit the conduct of which was taken from plaintiff and given to another creditor. The defendant was the executrix and sole legatee of testator. After decree, the defendant died appointing the plaintiff her sole .executor.-—Held, an order of revivor could be granted by the master <of the rolls on the motion of the creditor having the conduct of the cause.
42. Master’s power?] Biddulph v. Fitzgerald, Sauss. & Scul. 434. The master has jurisdiction under the 147th order to transfer the carriage of a decree from a plaintiff, who, through want of interest, is .unwilling to proceed.
*186 43. Ld. Alvanley v. Kinnaird, 13 L. J. (N. S.) Ch. 65 ; s. c., 8 Jur. 114. A party who had conveyed estates to trustees for payment of debts filed a bill against the trustees for an account and obtained a decree. The suit became abated by the death of one of the defendants. Delays having occurred, the master committed, the conduct of the suit to a creditor.—Held, whatever powers were formerly exercised by the court in relation to the subject-matter of the fifty-sixth order-are by it transferred to the master; and that the fact that the suit was abated when the order was made, and that the creditor was a party of" a class quite distinct from the plaintiff, formed no objection to the order.
44. On delay to commence reference apply to court j on delay to (continue it apply to the master.] Quackenbush v. Leonard, 10 Paige N. Y.) 131, 135. The court say: “As a general rule the party obtaining an order of reference is entitled to the prosecution thereof in the first instance. And where a decree is made on the hearing,, directing a reference in which both parties have an interest, the complainant’s solicitor is entitled to prosecute the reference unless the-court in making the decree thinks proper to commit the prosecution thereof to another party. (Benn. Off. of Master, 6; 2 Dan. Ch. Pr. 792 ; Biddulph v. Fitzgerald, Sauss. & Seal. Rep. 434.] In such a case, therefore, if the solicitor of the complainant neglects to carry the decree into the master’s office, and to take out and serve summons, upon the defendant’s solicitor within the time presented for that purpose by the 101st rule, the latter should apply to the court upon notice, to the adverse party to have the prosecution of the reference committed to him, or for such oilier order as may be proper to expedite the proceedings. And ivhere the party entitled to the carriage of the decree neglects to proceed with due diligence after he has committed the prosecution of the reference by the service of a summons to proceed thereon, the remedy of the other party is by an application to the master under the last clause of the same rule to have the further prosecution of the reference committed to him. [Citing Holley v. Glover,, 9 Paige, 9.]
45. Court will not grant when master can.] Forbes v. Pearson, 8 Ir. Eq. R. 35. The master in chancery has jurisdiction under the: 117th order to transfer the carriage of the decree; and where an application is made to the court that the master might have granted the application will be refused.
46. Master cannot give cai'riage of decree to another except after notice and hearing of groithd. ] Holley v. Glover, 9 Paige, Ch. 9.. The authority conferred on the master by the 101st rule to commit the-. *187 prosecution to another party does not give him arbitrary discretion to-commit the prosecution to another whenever he supposes that there, has been a want of due diligence; but, as under the former practice, the party who has the prosecution of the reference has a right to be heard upon the application, and to know upon what affidavits or other-evidence of neglect such application is to be founded.
47. Master’s order held only to apply to proceeditigs before time.] William v. Chard, 5 De G. & S. 9, 11. On a decree for the administration of a testator’s estate of the. suit of the persons beneficially entitled to the residue, the master committed the prosecution of the decree to a person who was not a party to the suit but whom he had found to be a pecuniary legatee under the testator’s will. The suit then abated by the marriage of one of the female plaintiffs after an application of the plaintiffs to revive the suit; they did not do so, and thereupon the legatee to whom the master had committed the prosecution of the suit, filed a bill of revivor in her own name as plaintiff against all the parties to the original suit. On demurrer to this bill,— held, that the master’s order committing the prosecution of the proceedings to the legatee was confined to proceedings in his own office and did not entitle her to file a bill of revivor in her own name. The-proper practice would have .been to apply for an interlocutory order in the original cause.
48. Mister’s refusal to give does not conclude the court.] Wyatt v. Sadler, 5 Sim. 450. Notwithstanding the master may have refused an application by a creditor that the further prosecution of the decree ■ might be committed to him instead of the plaintiff, the couit is at liberty to grant the application, the master judgment not being final.
49. The master’s taking away the carriage of the decree does not preclude from applying to court.] Whitehead v. North, Cr. & Ph. 78. The fifty-sixth order of 1828 applies only to proceedings in the master’s office, and therefore a plaintiff, from whom the master has, taken the conduct of the suit under that order, is not thereby precluded from afterwards making an application to the court in the suit.
50. Delivery of paper si] Livesey v. Livesey, 1 Russ. & Myl. 10. A suit brought by an elder brother and his infant sister and brother was conducted by another brother as solicitor, who was a defendant, and had adverse interest. The defendant brother died, and the sister, who had become of age succeeded to his rights. The elder brother applied to have the papers in cause that were in the possession of the agents., of the deceased brother delivered to him.—Held, that the motion should not be granted without the concurrence of the other plaintiffs..
*188 51. Neglecting solicitor ordered to surrender paper.] Commissioners of Charitable Bequest v. Walsh, 2 Moll. 382. Plaintiffs’ solicitor neglecting to proceed under the decree will be ordered in default to lodge the decree, and order of reference with his six clerks, and party apply to be at liberty to proceed instead of plaintiff, [“ His six clerks ” was that one of the six clerks in court, whom the plaintiff had employed, according to the ancient practice which required every suitor to employ one as his representative in court.]
52. Solicitor of the creditor in getting damages, entitled to take .copies of papers.] Bennett v. Baxter, 10 Sim. 417. The prosecution of a decree in a creditor’s suit having been taken from the plaintiff and committed to another creditor under the 56th order of 1828, the plaintiffs’ solicitor was ordered to allow such other creditors solicitor to inspect and take copies of all the papers in the cause in his possession.
53. Eqtcity is not hampered by the way the parties are ranged on one side or the other.] Cramer v. Bird, L. R. Eq., 143. The situation of a representative party in respect to his equitable rights is precisely the same whether he appears as plaintiff on the record or as defendant on the record. Thus where a representative of one class appears as plaintiff on the record, the objection that he cannot represent a class having somewhat different interests, is fullyjmet by allowing a member of the latter class to be joined as representative as a defendant overruling the objection recognized by the Lord Chancellor in Carlisle v. South East. R. R. Co., 1 Mas. N. & G., 689, 699.
54. United States Trust Co. v. N. Y. & West Shore R. Co. 6 Civ. Pro. R., 90 ; s. c., 67 How. Pr., 390. Action by trustee of' railroad mortgage for foreclosure. Plaintiffs obtain appointment of receiver by order made without jurisdiction, and insists upon its validity,—held, that bondholders, being beneficiaries to the trust, were entitled to apply to the court for the appointment of receivers superseding the appointment which had been thus made. Opinion by Daniels, J., question fully considered.
55- Brown v. Pacific Mail Steamship Co., 5 Blatchf., 525. In courts of the United States it is a familiar doctrine that where, to join one as co-plaintiff who applies to join in that character, would deprive the court of jurisdiction, but he can have the benefit of the ■suit by being joined as defendant, he may be so joined.