## John Adam Becker, Appellant, *v.* The Lebanon and Myerstown Street Railway Company.

*Practice, equity—Motion to dismiss for want of prosecution is obsolete.*

With the abolition of most of the cumbrous machinery of equity practice and the adoption of rules simplifying it, the reason for the motion to dismiss for want of prosecution has largely, if not wholly, disappeared. The defendant is no longer obliged to wait the plaintiff's motion at any stage of the proceedings but may either take or require the plaintiff to take any step necessary to expedite the cause.   The motion to dismiss for want of prosecution having been superseded by more effective remedies, has practically become obsolete.

*Practice, equity—Default in proceedings, how cured.*

Even were a plaintiff in default, such default is made good by a motion to hear before a motion to dismiss, and under the strictest practice a motion to hear would cure such default if made after a motion to dismiss, but before hearing of the latter motion.

*Practice, equity—Motion to dismiss for want of prosecution.*

A motion to dismiss for want of prosecution is improvidently allowed, where a motion to hear had been made by the plaintiff prior to the motion to dismiss. The plaintiff could be in no default while the motion to hear was under consideration by the court.

Argued March 11, 1897. Appeal, No. 52, March T., 1897, by plaintiff, from decree of C. P. Lebanon Co., No. 7, Equity Docket, 1893, dismissing bill in equity for want of prosecution. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Motion to dismiss bill filed for want of prosecution. Before EHRGOOD, P. J.

The bill was filed June 21, 1893. On July 1, defendant appeared, delaying answer, however, until ruled, and filed answer October 6. The plaintiff delayed replication, the defendant acquiescing by omitting to rule him to reply. On the first Monday of March, 1894, the amendments to the equity rules suspended proceedings until the adoption by the court of an order for the preparation of equity trial and argument lists. Such order was not made until August 29, 1895, when the court adopted special equity rule No. 3, which provided that "the court shall, at the instance of either party, upon reasonable notice to the other party, not exceeding thirty days, hear the case." January 6, 1896, a replication was filed. March 16, 1896, plaintiff moved the court to hear the case, and to fix the time and place for so doing, and to make the necessary orders for such hearing. March 30, 1896, the defendant moved to dismiss the bill for want of prosecution; both motions being held under consideration until December following. On December 9, 1896, an order was made dismissing the bill for want of prosecution, and December 10, the court indorsed on the motion to hear a direction for filing as of March 16, 1896, and it was accordingly filed as of that date.

It appears that no notice was given to the plaintiff of the motion to dismiss, but he was present and heard under protest.

374      BECKER, Appellant, v. RAILWAY CO.

Assignment of Errors—Opinion of the Court. [4 Pa. Superior Ct.

*Errors assigned.* were (1) sustaining motion to dismiss; (2, 3) dismissing bill.

*Bassler Boyer*, for appellant.

*C. H. Killinger*, with him *S. P. Light*, for appellee.

OPINION BY SMITH, J., April 12, 1897 :

Though, from the pleadings, the plaintiff's complaint appears well founded, this appeal does not directly involve a consideration of its merits, and on this point we need only say that it cannot be dismissed on bill and answer. The only question here is whether the order dismissing the bill for want of prosecution can be sustained. This must depend on the situation of the cause when the order was made.

Our equity rules contain no specific provision for the dismissal of a bill for want of prosecution. . The practice on this point must therefore be regulated by the general rules in relation to motions and orders, with such analogies as may be found in the practice of the English court of chancery on the 1st of July, 1865.

The contention of the appellant is (1) That he was in no default when the order was made ; and (2) That the order was irregular in having been made without notice.

Under the earlier practice in chancery, if the plaintiff did not proceed with the steps necessary on his part to bring the cause to a hearing, the defendant's only remedy was by motion to dismiss the bill for want of prosecution. The proceedings were so elaborate that neglect by the plaintiff might unduly delay the cause to the prejudice of the defendant, since the latter was obliged to await the successive movements of the plaintiff before moving in turn. Thus, it was the plaintiff's duty, after demurrer or plea, to set the cause down for argument or take issue on the plea ; after answer to the bill and interrogatories, and the same held sufficient, to set the cause down for hearing on bill and answer, to reply, or to amend should the answers make amendment necessary ; after replication, to serve a subpoena to rejoin, to obtain, when necessary, a commission to examine witnesses, have it executed and returned, to have rules to produce witnesses, to pass publication, to set down the cause for hearing, and serve a subpoena to hear judgment. The several

periods limited for the performance of these duties were fixed by general orders, and on default by the plaintiff the defendant might move to dismiss the bill for want of prosecution. If, however, after notice of this motion, the plaintiff made good the default or undertook to speed the cause by taking the step next required, or if upon hearing he satisfied the court that he had used due diligence and was reasonably entitled to further time, the motion was dismissed.

With the abolition of most of this cumbrous machinery, and the adoption of rules simplifying the practice, the reason for the motion to dismiss for want of prosecution has largely if not wholly disappeared. The defendant is no longer obliged to wait the plaintiff's motion at any stage of the proceedings, but may either take or require the plaintiff to take any step necessary to expedite the cause. The motion to dismiss for want of prosecution, having been superseded by more effective remedies, has practically become obsolete. "By the English practice, the motion to dismiss was merely for the purpose of expediting the proceedings of the complainant; and there is no ground for such an application on the part of the defendant where either party is at liberty to proceed in the cause:" Whitney v. Mayor, 1 Paige, 548.

Granting, however, that this motion may still be employed, no such default by the plaintiff is here shown as to justify its allowance. The bill was filed June 21, 1893. July 1, the defendant appeared; delaying answer, however, until ruled, and filing answer October 6. The plaintiff delayed replication, the defendant acquiescing by omitting to rule him to reply. On the first Monday of March, 1894, the amendments to the equity rules suspended proceedings until the adoption by the court of an order for the preparation of equity trial and argument lists. Such order was not made until August 29, 1895, when the court adopted "Special Equity Rule No. 3;" this provided that "the court shall, at the instance of either party, upon reasonable notice to the other party, not exceeding thirty days, hear the case." January 6, 1896, a replication was filed. March 16, 1896, the plaintiff moved the court "to hear the case, and to fix the time and place for so doing, and to make the necessary orders for such hearing." March 30, 1896, the defendant moved to dismiss the bill for want of prosecution. The court held both

motions under consideration until December following. December 9, an order was made dismissing the bill for want of prosecution; and December 10, the court indorsed on the motion to hear a direction for filing as of March 16, 1896, and it was accordingly filed as of that date.

It appears that no notice was given the plaintiff of the motion to dismiss. This was a disregard of the long settled practice. By the 17th of Lord Bacon's Ordinances, upon the plaintiff's default for one term after answer the bill might be dismissed by the defendant of course without motion; but after replication it could not be dismissed without motion and notice. Previous to the General Orders of 1828 and 1831, "there were few applications which more uselessly occupied the attention of the court, and were more variously decided, than motions to restore a cause dismissed for want of prosecution without notice:" 1 Smith's Chancery Practice, 332. By those orders, no bill could be dismissed at any stage of the proceedings, without notice; and through all subsequent changes of the English practice this provision has been retained. . .Our own equity rules are to the same effect. By Rule XIII., sec. 73, "all motions for rules or orders, and other proceedings, which are not grantable of course, or without notice, shall be made on application to the court or a law judge at chambers, and entered in the equity docket, and shall be heard at such time thereafter as shall be assigned therefor by the court or judge at the time of the making the application; and if the adverse party or his solicitor, after notice thereof, shall not then appear, or shall not show good cause against the same, the motion may be heard by any law judge of the court ex parte, and granted as if not objected to, or refused, in his discretion." As nothing that operates as a final order is grantable of course, a motion to dismiss falls within the provisions of this section, and an order of dismissal without notice is clearly irregular. It appears, however, that in the present case the court directed and heard argument on the motion to dismiss, though under protest on the part of the plaintiff as contrary to the rules of practice. In the absence of a rule fixing the character of the notice, this direction by the court may perhaps be construed as notice, and the plaintiff by proceeding to argument waived other notice. The lack of notice complained of was thus cured.

On the record, as it stood at the time of hearing, the plaintiff was in no default.  Even had his delay in moving to hear the cause been a default, it was made good by that motion before the motion to dismiss; and had the latter been first made, the default, under the practice of the strictest period, would have been made good by a motion to hear before a hearing on the motion to dismiss.  Conceding that the plaintiff was bound to speed the cause when the defendant had equal power to move for that purpose, the motion to hear was all that was incumbent on him.  He could be in no default while this motion was under consideration by the conrt.  Aside from this, reasons for holding the cause in abeyance are suggested in the history of the case, which may have been sufficient to excuse any apparent default.  But as no default is shown, the plaintiff cannot be thus summarily turned out of court.

The order dismissing the bill is reversed, the bill is reinstated, and it is ordered that the court below proceed in due course to hear the cause upon the motion presented March 16, 1896, and filed as of that date.